Case number 21-3053. United States of America v. Kelvin Otunyo, Appellant. Mr. Madden for the Appellant. Mr. Byrne for the Appellant. Good morning, Mr. Madden. I'm Drony Madden, CJA Counsel for Kelvin Otunyo. In brief time, I'd like to talk about three procedural errors, one substantive error. We'll rely on our briefs for the CASAGAR issue. Defense level should have been 22, not 26. Advisory guidelines should have been 46 to 57, not 70 to 87. The first procedural error, the court found an incorrect base offense level. Correctly grouped fake fraud and laundering together, and they correctly concluded that the most serious was money laundering, and therefore money laundering was the offense of conviction. The court incorrectly found the base level was 7 instead of 6. Defense level for an underlying offense from which the, I'm sorry, 2S1.1A1 provides that the offense level for the underlying offense from which the laundered funds were derived. And the underlying offense was bank fraud, so it corrects you to 2B1A1. And 2B1A1 provides 7 if the defendant was convicted of an offense in reference to this guideline. And the offense is more than 20, at least 20 years. Otherwise, it's 6. Reference to this guideline is defined in Note 2, 2B1.1. And it provides, for purposes of this section, an offense as reference to this guideline. If this guideline is the applicable Chapter 2 guideline, specifically referenced in Appendix A, as determined by the provisions of 1B1.2. Money laundering is not an offense, it's an offense of conviction, but it is not listed under 2B1. And therefore, it's not an offense referenced in this guideline. Money laundering is an offense of conviction. It is not an offense referenced in this guideline. And therefore, the base offense level should have been 6 and not 7. Feature number 2, the court incorrectly added 4 levels for sophisticated conduct, but should have only added 2. The court added 2 levels for sophisticated bank fraud and 2 levels for sophisticated money laundering. This is double counting. Note 6, 2B1.1, which addresses money laundering, it mandates that when money laundering is the offense of conviction, Subsection C, 3D1.2, which addresses groups of closely related accounts, is to be used, mandatory. The court used Subsection D instead, and that makes a difference. Subsection C provides that accounts are to be grouped together when one of the accounts embodies conduct that is treated as a specific offense characteristic in or other adjustment to the guideline applicable to another of the accounts. Note 5, 3D1, explains what that means. Note 5 provides, Subsection C provides that when conduct that represents a separate account is also a specific offense characteristic in or adjustment to another account, they are to be grouped together. This provision, quote, this provision prevents double counting of offense behavior. What that means is the court double counted sophisticated conduct to have only been penalized. Procedure number 3, the court incorrectly added 3 levels to Antonio's role in money laundering. The correct level is 2. The court enhanced by 3 based on conduct that dealt with bank fraud only, not to money laundering, and that is incorrect. The court said the record contains evidence not only that the defendant issued detailed instructions off the lobby, but that he also provided suggestions and instructions to other participants which were acted upon and affected the conduct of the bank's scheme. This is error. Note 2C to 2S1.1B states the relevant part. In cases in which Subsection A1 applies, which is here, application of any Chapter 3 adjustment, which would be a role adjustment, shall be determined on the offense covered by this guideline, that is, laundering of criminally derived funds, and not on the underlying offense. Mr. Madden, I'm not sure that I read the district court's decision quite the same way that you do. I mean, doesn't the district court also reference money laundering? I mean, some of the discussions are about bank fraud, but I think some of the discussion seems to go properly to money laundering. And the government's pre-sentence report also focused on this 3-level enhancement under the money laundering offenses, not the bank fraud. I mean, doesn't looking at that all together suggest that there may not have been any? Yeah, sure. I just want to point out that considering bank fraud is impermissible, the court did look at the money laundering aspects. But when you look at the money laundering aspects, there's very, very little there that has to do with my clients supervising anybody on the money laundering side. Well, can I ask you about that? In the government's brief at page 44, they list what seems to me quite a bit of managerial instructions that your client gave specifically to the money laundering, not to the bank fraud. Tanyo directed a co-conspirator to complete several debit transactions, issued several checks to co-conspirators to hide stolen funds. He directed a co-conspirator to set up a shell company in a bank account. He had co-conspirators deposit stolen checks. He issued checks to co-conspirators. He directed co-conspirators to help set up shell companies. There's a lot of, like, directing and instructing there. Almost all of that deals with bank fraud. If you look at the PSR, there are 58 paragraphs dealing with money laundering. Not one of them has enough – Pahlavi was not directed to do almost anything. And I can go through – I will go through those in just a second. He also – So, I mean – and the PSR is sealed, but I think I can refer to page numbers if you have it in front of you. Yes. It's – sorry, I don't have that. Fifty-eight paragraphs. I can find that for you if you'd like. Well, so in paragraph 71 and 72, again, it seems like it's talking about a lot of money laundering and seems like he's doing a lot of directing. Your Honor, paragraph 37 in the PSR, he sent a message to Pahlavi containing the name of a false alias and address. In paragraph 40, he told Pahlavi to obtain a tax information number for Novotel. In paragraph 41, he told Pahlavi to open a bank account. That is it. All the others, and there are many, deal with bank fraud. Clearly, the tenure was directing. He recruited a person, called person A. He gave her a fake ID. He told her to open accounts. He told her specifically what to do. Every one of those 15 paragraphs dealing with bank fraud, but that's not something you should consider. You're not supposed to consider for money laundering. That's – Was – you mentioned – what was the name you mentioned? Oh, it's – well, the person's name is Walker. He recruited her. He directed, micromanaged her every step of the way, but it was all bank fraud. What about – I just want to say the name if it's under seal. So you referred to paragraph 37 of the PSR. There's a person mentioned there in addition to your client. See that? Yes, send a message to Ofolabi. Okay, Ofolabi. So was that regarding the money laundering? Yes. That's hardly enough to make him a manager. I mean, the case – if I made the case in this – I mean, is your argument that there weren't five co-conspirators in the money laundering? He might have been a co-conspirator, but he wasn't a manager. That's – It looks like he's managing Ofolabi. Yes, for bank fraud, which is impermissible. I thought you said this was the money launderer, Ofolabi. No, Your Honor. Paragraphs – there are 15 paragraphs dealing with bank fraud where Otonio did retain – recruit a person and directed her every step of the way without any doubt. But on the money laundering side, he had very little direction of anybody. He's got two references to Ofolabi in that set. And the court had an overbroad view of what it is to be a manager. Quote, there can be many, many managers, supervisors, out of all those other people who are involved who are convicted and subject to sentencing. But U.S. v. Graham, this circuit says, the court found it did not discern any basis in the guidelines for enhancing the sentence for every participant in a conspiracy who does not reside in a broad layer. Can I now take you to JA-181? This is the plea hearing where he pleads guilty and the court's asking him multiple questions. He says that he – I think this is all related to the money launderer, so you can correct me if I'm wrong. I'm at JA-181. This is the sentencing transcript. I think it's the plea call, the hearing where he pleads guilty. I'm looking at page 181. Okay, so it says, you issued several checks to co-conspirators, including a debit transaction to Maryland Live Casino. Do you know if that's the bank fraud or the money one? He may have issued checks to them. That doesn't make – that's not one act. I know. I've got more. I just want to make sure we're talking about the money launderer. Well, I'm not entirely sure here. I think the PSR is much clearer, but it's hard to say here. Yeah, well, I won't go through them all if you're not familiar with them, but the government's response brief talks about JA-181, through, I think, JA-196, and they say that it's regarding the money laundering and he's admitting to a lot of directing. So I guess, do you have a response to that? I do not have a specific response, but I would say – my speculation would be strongly this deals with the bank. That's what he was really focused on. He was not a manager on the money laundering side. For example, in Graham, the court described – well, it wasn't a manager. That one, it wasn't a manager because he didn't receive extra compensation. That's true here. He did not discipline lower-ranking members of the conspiracy. That's true here. They did not alter the conspiracy policies or procedures in their respect. That's true here. They don't provide any guidance to senior managers. That's true here. Or otherwise held himself out as a link in the chain of command. That's true here. At most, as I said, he gave low-level instructions to off-lobby, given an address, told him to get a tax information, a tax ID, and go to the bank. That's it. And that's not sufficient. When you look at – Mr. Madden, I see that you're out of time. My colleagues have any other questions? Thank you. We'll give you a few minutes on rebuttal. I have one more issue. Well, but your time's up, so. Thank you. Good morning, Your Honors. May it please the Court, Kevin Barnett for the United States. I will just focus on the issues that appellant raised here at moral argument, so I won't touch on everything in the briefs. And I'll just start with the base offense level. So the base offense level is seven under a very straightforward reading of the guidelines. And I think it's telling that appellant's arguments throughout the briefs and even here is based on a very convoluted set of cross-references and application notes that he is trying to string together to try to avoid a very straightforward text in the guidelines. So everyone agrees that these are grouped together. And then if you look at the – Maybe I – Sure, go ahead. But I want to come back to that. Okay. The thing that everybody does agree on, but I'm not sure. Okay. So let's start at least from the premise for now, then, that these counts are grouped together. If you then look at Guideline 2S1.1, the base offense level for money laundering simply refers you to the guideline for bank fraud. It says that the base offense level is the offense level for the underlying offense. So whether we're talking about bank fraud, in which you would obviously go to 2B1.1, or we're talking about money laundering, which just cross-references you back to bank fraud, you have to go to 2B1.1. And 2B1.1 says, under A1, that the base offense level is seven if the defendant was convicted of an offense referenced to this guideline. An offense. Any offense that is referenced to this guideline. An appellant concedes to bank fraud is referenced to 2B1.1. He was convicted of it. There is no dispute about this. He falls within the plain language of A1. And there's no dispute about Part B, by the way, the stat max of 20 years or more. That word, an, is a very important word. He has been convicted of an offense. So an appellant is trying to say, well, he was convicted of money laundering, so forget about the bank fraud. That's not what the guideline said. They refer to any offense referenced to this guideline. And bank fraud is referenced to this guideline. And I think it's telling that appellant cites no court that has been faced with these facts that has adopted his possession. The only court that has faced these facts has agreed with the government. He does say that the sentencing, sent the commission. The probation officer here asked the sentencing commission whether everything you just said is correct. And they said no. That's correct. And the government would disagree with the sentencing commission. And I think Judge Howell also disagreed with the sentencing commission in a very respectful way. She acknowledged that she has a lot of respect for the sentencing commission and the lawyers who work there. But that she disagreed based on a plain language, plain text of the guideline. So, and I guess I'm with you, I think, with everything you just said. But I want to go back to where you said everybody agrees, which they do, that the money laundering and the bank fraud start out being grouped together. And the guideline that suggests that is 3D1.2. You could maybe take a look at it if you have it. I do, yes. 3D1.2C. And it says when one of the counts embodies conduct that is treated as a specific offense characteristic in the guideline applicable to another of the counts, you group. Here, the bank fraud that he was convicted on happened after, a lot of it at least, happened after the money laundering. In other words, the money he laundered did not come from the fraud he was convicted of. Am I right about that? Well, the separate counts that he was convicted under bank fraud are separate from the other money laundering schemes, I think is what Your Honor is getting at. So there are four schemes, and the first three schemes, which sustain convictions for money laundering, all happened before the fourth scheme, which sustained convictions for bank fraud. Okay, so bingo. So in light of that, I'm not sure if 3D1.2C applies because it says you group when one of the counts, that would be the money laundering, embodies conduct that is treated as a specific offense characteristic in the guideline. So when the money laundering count embodies the bank fraud conduct, you group. But here, he wasn't convicted of the bank fraud conduct that is embodied in the money laundering conviction. Right, so a few points on that, I think. I still think they group, but the government's position has been that they don't group under C, which is what Your Honor is referring to, that they instead group under D. So D says, when the offense level is determined largely on the basis of the total amount of harm or loss. And here, that is true to a large extent because under 2B1.1, we have to add 12 to the offense level because of the aggregate harm. The proceeds that Mr. Otonio admitted to obtain are something to obtain. And then there's some other language here, which is not applicable. You group those offenses together. Right, so let's say I agree with you on that or tentatively agree with you on that. There's a note, I think it's Note 5, and it says, of course, this rule applies only if the offenses are closely related. It is not, for example, the intent of this rule that a bank robbery on one occasion and an assault resulting in bodily injury on another occasion be grouped together. What's your argument for why that note does not apply to the situation here? Well, just to clarify, is this Note 5? Yeah. All right, so Note 5 is talking about subsidies of C. Yes. That's right. Exactly. And then just to finish this point, to close the circle on this, if you look at subsection D, 2B1.1 and 2S1.1 are both listed in that subsection. So that they would presumably group together as the district court did here. One other point that I just want to make on the base offense level. Well, actually, I think I should probably move on on that unless there are further questions because I see my time is running down a little bit. I'm good. Okay. All right, so just moving on to sophisticated conduct and the double counting. So, again, part of Cohen's argument here is relying on the C versus D distinction under grouping. He's saying it should have been under C. We say it's D. But one thing I want to emphasize to the court is that it doesn't matter either way. Because the note that he is pointing to, application Note 5, is talking about specific offense characteristics. And I want to use Rice, which is the case that he cites in his 28J letter, to explain why this situation is different. All right. So, in Rice, all that Rice decided was that because the defendant in that case got an extra enhancement under the money laundering, because the drug offenses basically triggered that specific offense characteristic, that the district court erred by not grouping those together. But what Cohen is trying to do is he's trying to say something different. He's trying to say that the enhancements have to group together. That the sophisticated laundering and the sophisticated means of bank fraud group together, simply because the parent's offenses group together. And that is not correct. There is no support for that in the guidelines. It would be correct if the bank fraud conduct and the money laundering conduct was the same conduct. But for reasons we've laid out in our brief, it is not the same conduct. Not only has he been convicted of different, as Judge Walker pointed, different conduct in the bank fraud versus the money laundering counts, but even within the money laundering conspiracies, there is separate conduct in which he has sophisticated bank fraud and sophisticated money laundering. And I would point the court to Cabrera, which we cite in our brief, the 11th Circuit, which is on point shutting down Appellant's claim. In that count, same exact factual situation. Money laundering and bank fraud grouped in that case, and the 11th Circuit still applied both enhancements. And Kasim is another case that we cite, which has a shorter discussion of this, but does the same thing. It applies to both enhancements. So the district court was correct that because there was separate conduct, Antonio had separate conduct when he did the sophisticated bank fraud versus the sophisticated money laundering. Both enhancements apply. I see I'm out of time. I can briefly address Manager and Supervisor, but I think Judge Rao and Judge Walker asked questions and made points that we would agree with and just expand upon. So if there are no further questions, we would ask that you affirm the judgment of the district. Thank you. Thank you. Mr. Madden, we'll give you two more minutes. I would like to address the substantial, substantively reasonable sentence. I think it's addressed because it relates to sophistication. If we're right about sophistication, this is irrelevant. But if we're wrong about sophistication, then this is highly relevant. Because under 3553, the court said, I'm going to give you a two-level reduction because sophisticated bank fraud and sophisticated money laundering are one and the same. That's what she did. That's what the guidance required. But if you don't think that is true, what she did for Otonio, and what she did for OJ, who was a guy much more senior, had him implicated before he did. He had much more involvement. He had a longer criminal history. He took more money by far out of this whole scheme, and she gave him a two-level reduction for sophistication. Double counting is exactly what we're arguing here. I don't believe that. It's here. A couple more points. Part D, which deals with multiple counts, in the internet, says when offenses are closely interrelated, and money laundering is always interrelated with some other crime. That's my definition. When offenses are closely interrelated, group them together for purposes of multi-count rules and use only the offense level for the most serious offense in there. What that means is, and DOJ doesn't want to follow the guidance, but it says if you arrive at the offense of conviction, which is money laundering, then that is all you use for sentencing. Otherwise, this is a complete mess. I promise you, I've taken a lot of time with this, and it would be a mess. You have to read it literally, and when you read it with the notes, this should be a very manageable sentence. Thank you. Thank you. Mr. Madden, you were appointed by the court to represent the appellant in this case, and the court thanks you for your assistance. Thank you.
judges: Rao, Walker, Ginsburg